**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| LYRAH HERNANDEZ, AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF LUIS CRUZ | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 19-cv-1153-JES-JEH ) |
| CITY OF PEORIA, ET AL, | ) ) |
| Defendants. | ) ) |

## ORDER AND OPINION

This matter is now before the Court on the Defendants' Motion (Doc. 79) in Limine No. 4 to Bar Evidence or Argument of Peoria Police Department Internal Policies. Plaintiff filed a Response (Doc. 85) in opposition. The Court heard argument on the Motion from the parties at the May 25, 2023 and June 28, 2023 pretrial conferences. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

### Background

This case arises out of the fatal shooting of Luis Cruz ("Cruz") by Defendant Peoria Police Department Officer Ryan Isonhart ("Officer Isonhart"). Plaintiff has maintained through the course of this litigation that Officer Isonhart and other members of the Peoria Police Department ("PPD") engaged in a cover-up of the circumstances of the shooting. These allegations formed the basis of Plaintiff's §1983 conspiracy claim against Isonhart and the other officers, which the Court dismissed at summary judgment. Doc. 60. At trial, Plaintiff seeks to introduce evidence of the alleged coverup in support of her remaining §1983 excessive force and state law claims. In particular, Plaintiff seeks to introduce as evidence specific Peoria Police Department Internal Policies and Guidelines relating to the use of force and the reporting

requirements when force is used. Defendant objected to the admission of this evidence and filed the instant motion in limine asking this Court to bar its admission at trial on the grounds that it is irrelevant to Plaintiff's Fourth Amendment claim under Seventh Circuit precedent and likely to confuse the jury as to what standards they are to apply. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Plaintiff argued in response that the significant deviations from training, policy, or rules can be used as evidence of intent under Seventh Circuit and Illinois precedent and therefore this evidence would be relevant to Plaintiff's state law willful and wanton claim as well as the calculation of punitive damages.

The Court heard argument from the parties on the motion at the May 26 pretrial conference and reserved its ruling. At the June 28 pretrial conference, the Court asked Plaintiff to give more detail on the intended use of the PPD policies. Plaintiff identified two Peoria Police Department internal policy documents she seeks to introduce as evidence: PPD General Orders 100.05, which covers "Rules and Regulations" ("Rules and Regulations General Order"), and PPD General Order 401.04, which covers "Use of Force (UOF)/ UOF Reporting" ("UOF/UOF Reporting General Order"). Docs. 79-2, 79-6. For the Rules and Regulations General Order, Plaintiff stated that they intend to use it to explain what a general order is, as well as general matters such as the differences between officers and supervisors within PPD and the duties of officers to be accurate, complete, truthful, and to accept responsibility for their actions. For the UOF/UOF Reporting General Order, Plaintiff seeks to use it, not for its regulations on when force and deadly force may be used, but for the ways that it sets out the responsibilities of supervisors when a use of force incident occurs and the policies and procedures other Peoria Police Department members are to follow, including how the scene is to be handled.

2

**Legal Standard**

Federal Rule of Evidence 104 provides in part: "Preliminary questions concerning …

admissibility of evidence shall be determined by the Court." "Trial courts issue rulings on

motions in limine to guide the parties on what evidence it will admit later in trial." *Perry v. City

of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). As the "trial progresses, the presiding judge

remains free to alter earlier rulings." *Id.*

**Discussion**

 The Defendant seeks to bar the admission of the Rules and Regulations General Order

and the UOF/UOF Reporting General Order on the grounds that each is irrelevant and unfairly

prejudicial. We address each order in turn.

<u>PPD General Order 100.05 Rules and Regulations</u>

The first General Order identified by Plaintiffs is PPD General Order 100.05 Rules and

Regulations. The 13-page Rules and Regulations General Order sets out the mission statement

and policy of the Peoria Police Department and the purpose of PPD General Orders serve. It

includes a number of high-level definitions, such as the definition of a general order, which PPD

officers are considered supervisors, and the differing responsibilities and duties between officers

who are supervisors and officers who are not supervisors. It additionally instructs officers that

they have a duty to be accurate, complete, and truthful in all matters and that they must accept

responsibility for their actions. These definitions and duties have some probative value as to

what roles different PPD Officer witnesses served and what their duties were and, though

Defendants contend they could be brought into evidence without introducing the General Order,

the General Order is nevertheless a permissible way to introduce them. If a particular witness

does not know specific definitions or duties listed in the General Order, it could be used to

refresh their recollection; in the unlikely event that witness denies any of these definitions or terms, it could be used for impeachment.

Defendants argue that there is a risk of confusing the issues as the introduction of the General Order could cause the jury to believe that Peoria Police Department Policies are the governing standards that they should apply when evaluating the issues in the case, rather than the Court's instructions of law. While the Court recognizes Defendants concern, the risk of confusion can be cured by an appropriate limiting instruction.

At the June 28th pretrial conference, Defendants stated that they were primarily concerned with the possibility that the Rules and Regulation General Order would be introduced as substantive evidence that could be reviewed by the jury during jury deliberations. To this point, Plaintiff indicated that they were not sure if they would seek to introduce the General Order substantively but wanted to preserve their ability to do so. In light of this uncertainty, Defendant's motion is denied as to the Rules and Regulation General Order and Defendants are free to renew their objection at trial where the Court can assess with a fuller record if Plaintiffs seek to introduce the Rules and Regulations General Order as substantive evidence.

PPD G.O. 401.04 Use of Force/UOF Reporting

The second General Order identified by Plaintiff is PPD General Order 401.04 Use of Force ("UOF")/UOF Reporting. The UOF/UOF Reporting General Order establishes guidelines for the appropriate use of force by Peoria Police Department officers. It also establishes guidelines for how a use of force incident should be documented and reported. As an initial matter, the Seventh Circuit has clearly mandated that police department rules, regulations, policies, and training are "completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th

Cir. 2006). While inadmissible to the Fourth Amendment reasonableness inquire, evidence of

rule, policy, and training violations may be admissible as circumstantial evidence of intent.

*United States v. Proano*, 912 F.3d 431, 438-39 (7th Cir. 2019) (in criminal prosecution under 18

U.S.C. §242 for violation of an individual's Fourth Amendment rights, "evidence of departmental

policies can be relevant to show intent…");  *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th

Cir. 2013) (in First Amendment retaliation claim, "[s]ignificant, unexplained or systemic

deviations from established policies and practices can no doubt be relative [sic] and probative

circumstantial evidence of intent."). The issue then is whether Plaintiff can use the UOF/UOF

Reporting General Order to establish Officer Isonhart's intent for their willful and wanton state

law claim and for punitive damages purposes.

At the June 28th Pretrial Conference, the Court asked Plaintiff to elaborate on how she

intended to use the UOF/UOF Reporting General Order for this purpose, especially given that

the substantive regulation largely replicates applicable law on the use of deadly force and

discharge of firearms.[1] Plaintiff stated that she seeks to use the UOF/UOF Reporting General

Order not for what it says substantively about the appropriateness of Officer Isonhart's use of

force, but instead to show that Officer Isonhart and other PPD Officers failed to comply with the

---

[1] The UOF/UOF Reporting General Order categorizes use of force incidents into five categories of increasing force, with Category V covering the use of deadly force. Doc. 79-6 at p. 10. The order authorizes such force "a) to protect the officer from what is believed to be immediate threat of death or great bodily harm[;] b)to prevent the escape of a fleeing forcible felon the officer reasonably believes will pose an immediate threat to human life should escape occur" and requires that "[w]here feasible, a police officer will give some warning before using deadly force to prevent the escape of someone who is fleeing." *Id.* The order further instructs officers only to utilize firearms "only when objectively reasonably [sic] considering the totality of the circumstances." These guidelines are dovetail with applicable law. *See e.g. Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022) ("police officer's use of deadly force on a suspect is a seizure within the meaning of the Fourth Amendment" and subject to the Fourth Amendment's objective reasonableness standard); *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (an "officer can reasonably exercise the use of deadly force" when he "reasonably believes the assailant's actions place him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury" or when the officer "reasonably believed that the suspect had committed a felony involving the threat of deadly force, was armed with a deadly weapon, and was likely to pose a danger of serious harm to others if not immediately apprehended.") (internal citations suppressed). As such, any alleged deviation from the substantive provisions of the UOF/UOF Reporting General Order add nothing to the jury's analysis.

5

reporting and documentation provisions of the General Order after the shooting. These deviations from the rules include the alleged failure of the on-scene supervisor to separate and prohibit communication between personnel and witnesses, ensure limited discussions, and prepare certain reports. Plaintiff seeks to use these deviations to support her argument that the officers' actions after the shooting were undertaken in an attempt to cover up and conceal any wrongdoing.[2]

Plaintiff has identified cases to support her position, but these are not on point as they deal with violations of substantive regulations on the use of force, and not the post-incident reporting/documentation of the use of force. In the first case identified by Plaintiff, two Chicago Police Officers were accused of using excessive force while arresting a man in a convenience store. *Brooks v. City of Chicago*, 2015 WL 3545386 at *1 (N.D. Ill. 2015). The Court allowed the officers to introduce the Chicago Police Department's Use of Force Guidelines for the purpose of establishing their (lack) of unlawful intent to challenge the plaintiff's state law and punitive damages claims. *Id.* at *5. Likewise in *Bolden v. City of Chicago*, a malicious prosecution case, the plaintiff was allowed to use evidence about the investigating officer's deviations from Chicago Police Department rules and regulations to establish the officer's malicious intent. *Bolden v. City of Chicago, et al.*, No. 17-cv-417 at Dkt. 467, p. 26. In *Arrington v. City of Chicago*, 2022 WL 2105871, a Chicago Police Department Officer crashed into the target of an extended car chase, killing the driver. *Id.* at *2. There, the court allowed an expert to testify that the chase did not conform to ordinary vehicle pursuit practices in support of the willful and wanton claim. *Id.* at *6.

---

[2] The Court notes that this alleged cover up was the basis of Plaintiff's §1983 conspiracy claim which was dismissed at summary judgment. Doc. 60. Plaintiff cannot use the UOF/UOF Reporting General Order as an end-run around the Court's summary judgment order.

The logical nexus between the rule violations alleged by Plaintiff and Officer Isonhart's state of mind is unclear and markedly different than in the cases cited by Plaintiff. Illinois law defines the state of mind for a willful and wanton claim as "actual or deliberate intention to cause harm" or "if not intentional, [conduct] which shows an utter indifference to or conscious disregard for the safety of others or their property." *Hudson v. City of Chicago*, 881 N.E.2d 430, 451 (Ill. App. 1st. 2007) (citing 745 ILCS 10/1-201). If a police officer shoots at a person contrary to his training or department rules and regulations, there is a reasonable inference that his actions were intentional or in utter indifference to or conscious disregard of the safety of others. If, instead, a police officer shoots at a person and, subsequently, he and/or other officers fail to secure the scene or limit discussion between witnesses, it is not clear what this says about the officer's state of mind at the time of the shooting. At most, it suggests an after-the-fact consciousness of guilt or wrongdoing precipitating a coverup. Plaintiff fails to identify caselaw, and the Court has not found any, supporting the admissibility of this evidence to prove the intent element for willful and wanton conduct or punitive damages. As such, Plaintiff cannot use the UOF/UOF Reporting Guidelines to argue that Officer Isonhart or other officers' deviations from the reporting guidelines is evidence of Officer Isonhart's state of mind when he shot Cruz.

That said, this evidence is not wholly inadmissible. The purpose of the reporting requirements is to deny witnesses the opportunity to get their stories to match to document the incident most accurately. If Plaintiff can establish that the officers failed to comply with the PPD UOF Reporting guidelines, the jury could reasonably infer that the PPD Officers and related witnesses' versions of events were altered to protect Defendant Officer Isonhart. This evidence is therefore probative of the witnesses' opportunity to fabricate or alter their testimony and therefore goes to their credibility. As with the Rules and Regulations General Order, this could

be accomplished without introducing the General Order, but the General Order could be used to refresh a witness's recollection or for impeachment.

## Conclusion

For the foregoing reasons, the Defendant's Motion (Doc. 79) in Limine is GRANTED IN PART and DENIED IN PART. Defendant's Motion is GRANTED to the extent that Plaintiff will not be allowed to introduce the Peoria Police Department General Order 400.04 Use of Force ("UOF")/UOF Reporting requirements as substantive evidence of Officer Isonhart's state of mind at the time of the shooting. The Motion is otherwise DENIED.

Signed on this 4th day of August, 2023,

s/ James E. Shadid
James E. Shadid
United States District Judge
